IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

DEC 12 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| **VETNIQUE LABS, LLC** | ) | |
| Plaintiff, | ) | Case No: 1:23-cv-15946 |
| v. | ) | JURY TRIAL DEMANDED |
| **PAUL BUTLER** | ) | |
| Defendant | ) | |

### DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, Paul Butler, a Natural Person and individual (hereinafter "Defendant"), Pro Se, hereby answers the Complaint of Plaintiff, Vetnique Labs, LLC. ("Plaintiff") and asserts its Affirmative Defenses as follows:

### PARTIES

1. Admitted.
2. Admitted in part, denied in part – Defendant denies selling infringing products bearing the Plaintiff's trademark.
3. Denied.

### JURISDICTION AND VENUE

4. Denied. Paragraph contains conclusions of law.
5. Denied in part, admitted in part. Defendant has received cease and desist communication. Defendant denies substantial and regular sales in Illinois. Defendant denies substantial quantities of infringing products. Paragraph contains conclusions of Law.
6. Denied.
7. Denied.
8. Denied – Contains conclusion of Law.

### FACTUAL ALLEGATIONS

9. Admitted.
10. Denied.

11. Admitted in part, Denied in part. Admitted to a highly competitive market. Plaintiff makes claims against the Defendant without any basis of fact or knowledge.
12. Admitted.
13. Admitted.
14. Admitted in part, Denied in part. Conclusion of Law
15. Admitted.
16. Admitted.
17. Admitted in part, Denied in part. Trademarks being widely recognized by general public is unknown and a conclusion Defendant denies.
18. Admitted in part, Denied in part. Conclusions made about exclusive distribution, recognized and substantial value are all conclusions denied.
19. Admitted.
20. Admitted.
21. Admitted in part, Denied in part. Brand owner's ability to "control" quality and safety is denied.
22. Denied.
23. Denied.
24. Denied.
25. Denied.
26. Denied.
27. Denied. Plaintiff sells the same products online as Defendant.
28. Denied in part. Admitted in part. General characterizations do not apply to Defendant. Plaintiff sells under their business name online, Defendant does not – confusion by a customer is not possible as to who is selling the products. Broad general outlines of what other customers believe are unknown and do not apply to the Defendant. Plaintiff takes issue with the online marketplace policy, which does not apply to the Defendant. Defendant admits that customers purchase products in online marketplaces.
29. Denied in part, Admitted in part. Admit that the consumer purchases products online. The rest of the paragraph concludes what consumers believe, which does not apply to the Defendant.
30. Denied in part, Admitted in part. Agree that the consumer makes purchases online. The paragraph makes conclusions and claims that do not apply to the Defendant.
31. Denied in part, Admitted in part. Agree that the online marketplaces give customers a forum for reviews and feedback. Any online feedback from customers is posted on the online sellers account that sold the product. Plaintiff also sells in the same marketplaces, with the same risks.
32. Denied.
33. Denied.
34. Denied.
35. Denied.
36. Denied.
37. Denied.
38. Admitted.
39. Denied.

40. Admitted.
41. Denied.
42. Admitted in part, Denied in part. Defendant has sold Vetnique products. The reviews referenced are of the product. Reviews are not of the Defendant's sales and are over a year old in cases. Plaintiff also sells on the same marketplaces, with the same risks. Plaintiff Amazon feedback rating of 93% is the same as Defendant's. The multitude of sellers selling Vetnique Labs products is not confined to the Defendant. Reviews would be of sales associated with other sellers, not the Defendant.
43. Denied in part, Admitted in part. Admit that Amazon does not allow reviews to identify the seller. The rest of the paragraph is conclusions that are not associated with the Defendant. Blanket statements, general characteristics, do not apply to the Defendant.
44. Admitted in part, Denied in part. Reviews are of Vetnique products. The rest of the paragraph is general statements that do not apply to the Defendant.
45. Denied in part, Admitted in part. General statements that do not apply to the Defendant. Quality controls are admitted to by the Defendant.
46. Denied.
47. Admitted.
48. Admitted.
49. Denied.
50. Denied in part, Admitted in part. Admit to quality control requirements.
51. Denied.
52. Denied.
53. Denied.
54. Denied in part, Admitted in part. Vetnique Labs, LLC has quality controls. Quality control is for Plaintiff's authorized sellers, under contract with Plaintiff, which the Defendant is not a party to, and not required to follow under the law. Plaintiff made minimal effort in locating Defendant in online marketplaces.
55. Denied.
56. Denied.
57. Denied.
58. Denied.
59. Denied.
60. Denied.
61. Denied.
62. Denied.
63. Denied.
64. Admitted in part, Denied in part. Plaintiff quality control and customer service are legitimate and substantial. The paragraph contains general outlines and conclusions that do not apply to the Defendant.
65. Denied in part, Admitted in part. Quality control is material and helps protect the customer. General considerations of what the consumer might think if relation to a sale is impossible to know, and do not apply to the Defendant. General statements as to the online marketplace policy is between Plaintiff and the marketplace and have nothing to do with Defendant.
66. Denied.

67. Denied.
68. Denied.
69. Denied.
70. Denied.
71. Denied.
72. Denied.
73. Denied.
74. Denied.
75. Denied.
76. Denied.
77. Denied in part, Admitted in part. Admit to how Plaintiff handles fulfillment issues, as stated. The rest of the paragraph is ambiguous and broad, and any policy differences between Plaintiff and any online marketplace would be handled between Plaintiff and said marketplace. Policy differences with online marketplace has nothing to do with Defendant.
78. Admitted in part, Denied in part. Plaintiff quality control of product is admitted to. The reviews submitted in Plaintiff suit also applies to Plaintiff's account on Amazon as well. Plaintiff is not responsible for the online practices of the Defendant. The conclusions made in the paragraph are broad and do not apply to the Defendant. The mention of authorized seller does not apply to Defendant, as outlined above.
79. Denied in part, Admitted in part. Admitted in part on the test buy purchases from online marketplaces. Denied in part, as mention of the authorized seller component does not apply to the Defendant, as outlined above multiple times.
80. Admitted. Plaintiff has the right to attempt quality controls of products.
81. Denied.
82. Admitted in part, Denied in part. Admit to some form of satisfaction guarantee. Online marketplaces have written policies for customer service. Any disagreement of policy between Plaintiff and any online marketplaces should be addressed between parties and has nothing to do with Defendant.
83. Denied in part, Admitted in part. Plaintiff has a satisfaction guarantee with customers is admitted. Defendant honors said agreement, though online marketplaces has their policy on returns and customer satisfaction, which the Defendant follows. Any problems between online marketplaces policy and Plaintiff should be addressed between Plaintiff and online marketplaces, which have nothing to do with Defendant.
84. Admitted in part, denied in part. Admit that Plaintiff has control of policy for products Plaintiff sells. Online marketplace written policy is followed by Defendant. The Plaintiff mention of policy differences between online marketplace and Plaintiff should be addressed by the two parties, which does not apply to the Defendant.
85. Admitted in part, Denied in part. Admit that the Plaintiff monitors sales online. The rest of the paragraph is broad statements that do not apply to the Defendant.
86. Denied in part, Admitted in part. Admit to online sales, within the confines of online marketplace written policy on Plaintiff products, through Mustang Fliers storefront. Deny any sales were illegal and not high volume.
87. Denied in part, Admitted in part. Defendant admits to operation of Mustang Fliers storefront, on the online marketplaces listed, selling products within the confines of marketplaces written

4

policy regarding sales. Defendant denies any sale was unlawful. Any trademark issue would be covered under the First Sale Doctrine Law, which would apply to sales online, which would not require any Authorized Seller status, or contract between Plaintiff and Defendant.
88. Admitted in part, denied in part. Defendant admits to operation of the online storefront Mustang Fliers. Deny that received packages had Defendant's name on any return label. Plaintiff claims of making purchases from Defendant would need to be listed for verification.
89. Admitted in part, denied in part. Admit that Defendant is not subject to Plaintiff rules regarding sales, as Defendant is not Authorized seller of Plaintiff due to not being a party to any contract between Plaintiff and Defendant. Defendant denies not complying with rules regarding quality control.
90. Admit in part, Deny in part. Defendant admits to receiving a cease-and-desist letter from Plaintiff. Defendant denies the premise and accusations made in that letter and denies illegal sales and the accusations made by said letter.
91. Admit in part, deny in part. Defendant did not respond to the letter and did receive a second letter as described. Defendant again denies the general, bias, and baseless accusations in that second letter, just as the first letter.
92. Admit in part, Deny in part. Admit to receiving cease and desist letter. Defendant denies stopping sales as a result of any cease-and-desist letter. Defendant denies any Trademark issue, as First Sale Doctrine law does not require Authorized sales being a condition for coverage and protection of the law.
93. Deny in part, admit in part. Mustang Fliers was organized in Florida in 2023. Defendant denies that this 2023 organization was a part of any online marketplace, and the 2023 date shows that this organization was formed after all the claims Plaintiff has made regarding timelines.
94. Admit in part, Deny in part. Defendant admits to having an ex-wife and minor child with said ex-wife. The defendant is not in the US Military, but current wife serves active duty. Claims by the ex-wife are biased, inflammatory, and inaccurate. Defendant disputes ex-wife embellished claims regarding issue. Defendant also denies any fraudulent activity on paperwork and organization. Ex-wife hearsay conversations and knowledge is incorrect and an obvious attempt to cooperate with Plaintiff to bring forth a lawsuit. Actions by the Defendant, and acknowledgement of the Plaintiff show that the Defendant chose not to "ignore" any notices from Plaintiff, as there have been year's worth of these such letters sent to the Defendant.
95. Admitted.
96. Admitted in part and denied in part. Admit to all except reference to any Trademark issue, as any Trademark infringement claims are denied, as First Sale Doctrine does not prevent the sales of products bearing any trademarks of products, as long as the criteria is followed, which the Defendant has done, been doing, and continues to do. First Sale Doctrine does not require Authorized seller status to any company, contract between business and seller, of permission. As such, Defendant denies any Trademark infringement inference in the paragraph, or any paragraph throughout.
97. Admitted. After years of these letters with inaction from Plaintiff, and multiple mailings to same addresses, Defendant has claimed, and continues to claim these accusations are baseless. Defendant also requested that Plaintiff's attorney's cease and desist the monthly

barrage of these letters, and Defendant denies any wrongdoing in sales. This test sale was to an address in Ohio, not Illinois.

98. Admitted. Test purchase made by Plaintiff counsel with intent to create minimum criteria for lawsuit. Defendant cannot find another order for Illinois in the last 365 days.

99. Admitted.

100. Denied.

101. Denied.

102. Denied in part, Admitted in part. Defendant admits maintaining online marketplaces, within the written policies of those said marketplaces. Defendant denies infringement on any Trademark issues with Plaintiff, as First Sale Doctrine established Law is clear on the issue of selling items with Trademarks, and Defendant is working within the confines of that Law. Defendant also does not have a working, enforceable, contract with Plaintiff, making any contract enforcement impossible, as Defendant is not a party to any Authorized Seller agreement. Defendant also claims that the only Illinois shipments of Plaintiff's products have been to Plaintiff's lawyers, and not on a regular basis. Other test buys from Plaintiff have been to attorney living in states outside of Illinois.

103. Admitted.

104. Denied in part, Admitted in part. Defendant admits to selling in online marketplace channels, within the confines of their respective written policies for selling. Defendant maintains operations within those policies of the online marketplace and is subject to enforcement and discipline actions of said online marketplaces. Defendant denies needing "authorization" from Plaintiff to sell products online, as First Sale Doctrine protects against such bully trademark techniques. Defendant also denies that any claims of Trademark infringement by Plaintiff does not apply, again due to the First Sale Doctrine of Law, which the Defendant is subject to and complies with. Online marketplaces also permit such sales, and have not removed products from their sites, despite repeated calls by Plaintiff to remove, as sales are lawful and permitted in online marketplace. Any disagreement with policy between Plaintiff and marketplace should be conducted between Plaintiff and marketplace and has nothing to do with the Defendant.

105. Denied.

106. Admit in part, Deny in part. Defendant admits that Plaintiff considers their quality control are legitimate. Defendant denies that Plaintiff has enforcement control over any sales made that comply with First Sale Doctrine and the written policy of the online marketplaces. Defendant also denies any Trademark infringement claims made by the Plaintiff.

107. Deny in part, Admit in part. Plaintiff claims that Authorized sellers have rules to follow, which Defendant admits. Defendant denies being part of those requirements, as Defendant is not a party to any contract with Plaintiff to enforce such contract requirements. Defendant is subject to the written policy(s) of online marketplaces, which Defendant follows, or those online marketplaces would suspend, terminate selling rights.

108. Denied.

109. Denied.

110. Denied.

111. Admit in part, Denied in part. Defendant agrees that customers have written such reviews. Defendant denies selling any products that are tampered with, not sealed, used,

damaged, very old, or counterfeit – and no claims or feedback reflects that against Defendant. Plaintiff also submitted three feedbacks, and none are any products that belong to the Plaintiff. There is no connection between submitted screenshots and Plaintiff products, and three feedback claims of 6,585 feedback postings is not an accurate reflection of service by Defendant, in fact, it is an attempt to shade the Defendant in a bias attempt to smear.

112. Admit in part, Deny in part. Defendant agrees that Plaintiff sells through "authorized sellers," subject to Plaintiff rules regarding sales. Defendant maintains that no such contract has been entered into with Plaintiff, making Plaintiff rules and regulations regarding that contract not enforceable on the Defendant. Defendant denies again the use of three old feedback screenshots of 6,585 feedback postings on just Amazon marketplace in over a decade of sales. These screenshots also are of products that do not belong to the Plaintiff, and not of any Illinois residents.

113. Denied.
114. Denied.
115. Denied.
116. Denied.
117. Denied in part, Admitted in part. Defendant admits they are not an authorized seller for Plaintiff. Defendant agrees that Defendant is not subject to Plaintiff's quality control requirements. Defendant denies that Plaintiff has enforcement authority over the Defendant. Defendant denies infringement on any Trademark of Plaintiff, for reasons stated above. Plaintiff sells on the same marketplaces as Defendant, with any and all restrictions in policy by those marketplaces. The mention of the quality guarantees are voluntary and followed by the Defendant.
118. Denied.
119. Denied.
120. Denied.
121. Denied.
122. Denied.
123. Denied in part, Admit in part. Defendant admits to continuing to sell products online, in multiple marketplaces. Defendant denies any Trademark infringement, due to First Sale Doctrine. Defendant is not required to disclose source of products to the Defendant. The boundaries of the First Sale Doctrine does not require disclosure of source methods. Defendant is not a party to any contract with the Plaintiff, and is not required, or bound, to disclose sourcing.
124. Denied.
125. Denied.
126. Denied.
127. Denied. Plaintiff again admits that Plaintiff does not know where the Defendant sources products.
128. Denied.
129. Denied.
130. Denied.
131. Denied.
132. Denied.

133. Denied.
134. Denied.
135. Denied.
136. Denied.
137. Denied.
138. Denied.
139. Denied.

## FIRST CAUSE OF ACTION

140. Denied.
141. Admitted.
142. Admitted.
143. Admitted.
144. Denied.
145. Denied.
146. Denied.
147. Denied.
148. Denied.
149. Denied.
150. Denied.
151. Denied.
152. Denied.
153. Denied.

## SECOND CAUSE OF ACTION

154. Denied.
155. Denied.
156. Denied.
157. Denied.
158. Denied.
159. Denied.
160. Denied.

## THIRD CAUSE OF ACTION

161. Denied.
162. Admitted.
163. Admitted.
164. Admitted.
165. Denied.
166. Admit in part, Deny in part.     Defendant denies being engaged in unlawful sales of Plaintiff's products.  Defendant denies any Trademark infringement or misuse.

8

167. Denied.
168. Admit in part, Deny in part. Defendant agrees that Plaintiff does not know the source of Defendant's products. Defendant admits that there is no enforceable contract between Defendant and Plaintiff. Defendant denies any Trademark misuse or infringement.
169. Denied.
170. Denied in part, Admit in part. Defendant agrees with quality controls by Plaintiff. Defendant denies that Plaintiff quality controls apply to Defendant, as Defendant does not have an enforceable contract with the Plaintiff.
171. Denied in part, Admit in part. Defendant admits that Plaintiff enforces quality controls on Authorized Sellers Plaintiff contracts with. Defendant denies that Plaintiff has controls over the Defendant, as Plaintiff admits in #168 that there is no enforceable contract between Plaintiff and Defendant. Defendant denies any Trademark infringement or misuse.
172. Denied.
173. Denied.
174. Denied.
175. Denied.
176. Denied
177. Denied.
178. Denied.
179. Denied.
180. Denied.
181. Denied.
182. Denied.

## FOURTH CAUSE OF ACTION

183. Denied.
184. Admitted.
185. Admitted.
186. Admitted.
187. Admitted in part, Denied in part. Defendant denies that only Authorized sellers can sell Plaintiff products. First Sale Doctrine applies to sales from outside "Authorized" sellers online and offline.
188. Denied.
189. Denied.
190. Denied.
191. Denied.
192. Denied.
193. Denied.
194. Denied.
195. Denied.
196. Denied.
197. Denied.

## FIFTH CAUSE OF ACTION

198. Denied.

199. Denied.
200. Admit in part, deny in part. Defendant admits that Plaintiff enters into contracts with Authorized Sellers. Defendant admits there is no enforceable contract between Defendant and Plaintiff. Defendant denies that Plaintiff has exclusive control over every sale of products online and offline.
201. Denied.
202. Denied.
203. Denied.
204. Denied.
205. Denied.
206. Denied.
207. Denied.
208. Denied
209. Admitted. Defendant is also not a party to contract or agreement between Plaintiff and Authorized Sellers.
210. Denied.
211. Denied.
212. Denied.

## AFFIRMATIVE DEFENSE

1. The defendant contends they are not liable for trademark infringement for selling the plaintiff's product under the plaintiff's trademark because there was previously an authorized sale of the item. After the first authorized sale of an item, the holder of the item's trademark may not claim trademark infringement for subsequent sales of the item under that mark.
2. The first sale doctrine is an affirmative defense to trademark infringement. *See Bluetooth SIG Inc. v. FCA US LLC*, 30 F.4th 870, 871 (9th Cir. 2022). "Under the first sale doctrine, 'with certain well-defined exceptions, the right of a producer to control the distribution of its trademarked product does not extend beyond the first sale of the product.'" *Id.* at 872 (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) (per curiam)). "Trademark rights are 'exhausted' as to a given item upon the first authorized sale of that item." *Bluetooth*, 30 F.4th at 872 (quoting *McCarthy on Trademarks and Unfair Competition* § 25:41).
3. Application of the first sale doctrine "has generally focused on the likelihood of confusion among consumers," Au-Tomotive Gold Inc. v. Volkswagen of America, Inc., 603 F.3d 1133, 1136 (9th Cir. 2010). Its "essence" is that "a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Sebastian*, 53 F.3d at 1076. However, "[b]inding precedent extends the first sale doctrine beyond what Sebastian described as the doctrine's 'essence.'" *Bluetooth*, 30 F.4th at 873. The first sale doctrine's accommodation between the policies of protecting good will and preventing confusion on the one hand, and preserving an area for competition on the other, raises different issues

in the context of pure resales (where confusion ordinarily does not exist), than in the context of incorporated products, where the likelihood of confusion "will depend in some way on how a seller uses the mark of the incorporated product in connection with a new product." Id.

4. No Confusion of sales - Plaintiff sells products online including Amazon, under the name "Vetnique Labs". The Defendant sells under the name "Mustang Fliers" – as such, there is no confusion between sellers of the same product on the open, online marketplace, including but not limited to, Amazon.
5. Defendant's purchase of genuine products and reselling those genuine products does not violate any trademark issues, as the Plaintiff alleges.
6. Defendant's products are subjected to the same quality control standards as any store selling Plaintiff products, and any storage of Plaintiff products. Plaintiff cannot show or prove that the Defendant does not have the same quality control standards. Defendant's products carry the exact same guarantee as Plaintiff, and Amazon standards. Amazon standards for customer service and return guarantee often exceed Plaintiff's. No material difference claim can exist when the same standards are met. Plaintiff has never been to Defendant facilities to inspect or inquire about quality control, and as such, could not assert any claim that quality control is laxing, or not up to the standards of the Plaintiff.
7. Plaintiff's claims are ambiguous, open ended, and do not apply to the Defendant – and no such evidence exists to support such claims, as Plaintiff has no knowledge of any standards set by the Defendant.
8. Many of the Plaintiff claims in the complaint do not apply to the Defendant, and in fact are directed at online marketplaces, including Amazon, and Amazon policy regarding sales of Plaintiff products. Defendant does not set Amazon policy to post products for sale, and Amazon has control over who sells products on Amazon webpage. Because Amazon controls sales, and not the Plaintiff, the Plaintiff cannot dictate a third party to remove products that Amazon deems eligible to sell.
9. After years of threatening, harassing, and baseless threating letters from Plaintiff, through VORYS law firm, over sales on Amazon, without legal action, any action against Defendant, and not countless other sellers selling Plaintiff products online, including Amazon, is bias in nature, and a bully attempt to stifle and suppress competition.
10. Plaintiff used screenshot examples to support claims against Defendant – though those screenshots are not the Defendant's customers, or products Defendant sold.
11. Plaintiff used screenshot examples of negative feedback, and none of the screenshots show any of the Plaintiff's products. These screenshot examples do not support any of the Plaintiff claims and cannot show Defendant is responsible for the claims Plaintiff has made in this complaint.
12. Laches: Plaintiff has been sending threatening letters to Defendant for years, and knew of sales by Defendant in these years, as Plaintiff referred to their complaint. Plaintiff has waited all these years, including beyond the statute of limitations, and delayed filing suit. This delay has caused evidence to no longer be available, and the delay by the Plaintiff has caused this Laches issue. Due to Plaintiff's knowledge of sales beyond the Statute of Limitations, this Complaint should be Dismissed, as Laches Defense.

13. No Breech of Contract between Plaintiff and Defendant exists, as Defendant is not a party to any contract has between Plaintiff and third parties. As such, the Defendant is not a party to those contracts, or negotiations, and has no obligation to adhere to those contracts.
14. Attorney fees are not recoverable.
15. Plaintiff is seeking to recover speculative profits, and damages that are purely speculative.
16. Comparative Fault exists as there is a third party responsible for all of Plaintiff's damages.
17. False Claims defense exists as the Plaintiff's claims are barred as a matter of law as complaint makes numerous blatantly false claims.
18. Failure to exhaust administrative remedies – Plaintiff has failed to exhaust remedies through the online marketplaces.
19. Acquiescence – Plaintiff has known about Defendant sales online for over three years, without action, as such, has acquiesced to sales in and on the online marketplaces.
20. The wrong party is being sued.
21. Defendant reserves the right to add additional Affirmative Defenses moving forward.

**PRAYER FOR RELIEF**

**WHEREFORE**, Defendant denies the Plaintiff is entitled to any of the relief requested in this filing, including after Paragraph 213 and in the unnumbered submission, A through D, with subsections, by the Plaintiff. Defendant respectfully requests this Court to dismiss the Complaint in its entirety and enter a judgment in its favor and against the Plaintiff.

The final paragraph of the Plaintiff also requires no answer or response. To the extent a responsive pleading is required, Defendant is entitled to a jury trial.

Respectfully submitted,

_____

Paul Butler, Pro Se

2023 Evergreen Way SW

McChord Air Force Base WA 98439

203.715.6247

ontheroadpaul@aol.com

Dated: December 04, 2023

12

**CERTIFICATE OF SERVICE**

This is to certify that I have placed a copy of this Answer upon the Plaintiff in the United States Mail, Priority Mail, with Tracking Number 9405 8301 0935 5044 4313 56 on 05DEC23

*[signature: Butler]*

Paul Butler, Pro Se

2023 Evergreen Way SW

McChord Air Force Base 98439

13